```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


CLEAN HARBORS RECYLCING        )
SERVICES CENTER OF CHICAGO,    )
LLC, and CLEAN HARBORS         )
ENVIRONMENTAL SERVICES, INC.,  )
                               )
          Plaintiffs,          )   CIVIL ACTION NO.
                               )   12-10594-DPW
                               )
     v.                        )
                               )
HAROLD MARCUS LIMITED,         )
                               )
          Defendant.           )
```

MEMORANDUM AND ORDER
March 29, 2013

### I. BACKGROUND

Harold Marcus Limited ("Harold Marcus" or "defendant") provided interstate transportation of waste materials for Clean Harbors Recycling Services Center of Chicago, LLC, and Clean Harbors Environmental Services, Inc. (collectively, "Clean Harbors" or "plaintiffs"), pursuant to a May 9, 2008 Waste Transportation Agreement ("WTA"). In a Standby Emergency Response Agreement ("SERA") of the same day, Clean Harbors agreed to provide remediation services--including containment, disposal, and decontamination--for discharges of hazardous materials that might occur in the course of Harold Marcus' shipping activities.

On July 21, 2011, a Harold Marcus tractor and tanker carrying waste materials for Clean Harbors exploded in Michigan,

while en route from a Clean Harbors facility in Indiana to another in Ontario, Canada.  Pursuant to the SERA, Clean Harbors provided cleanup services for the resulting release of waste materials into the environment.  Clean Harbors sent Harold Marcus invoices for $688,806.05 for work performed between July 21, 2011 and September 9, 2011.  To date, Harold Marcus has not paid Clean Harbors for its emergency response services.

Meanwhile, in December 2011, the Michigan Department of Environmental Quality, Water Resources Division ("MDEQ") commenced an administrative action against Clean Harbors for the resulting discharge from the explosion.  That action was resolved pursuant to a consent order, under which Clean Harbors agreed to pay $100,000 to MDEQ.  Clean Harbors may also be subject to penalties from the U.S. Environmental Protection Agency and U.S. Department of Transportation for the incident.

Clean Harbors initiated this action in Norfolk Superior Court in February 2012.  Harold Marcus removed to this court on April 3, 2012, on the basis of both diversity and federal question jurisdiction.  The operative amended complaint includes four breach of contract counts as to the SERA and WTA.  Count I alleges breach of the SERA.  Count II seeks declaratory judgment as to breach of WTA Section 7, in which Harold Marcus agreed to indemnify Clean Harbors for liabilities it may incur as a result of "destruction or damage to any property, contamination or

adverse effects on the environment, or any violation of applicable federal, state and local laws" to the extent caused by Harold Marcus' negligence or breach of the WTA.  Count III seeks declaratory judgment as to breach of WTA Section 8, under which Harold Marcus agreed to maintain certain insurance coverage levels.  Count IV alleges breach of the WTA by Harold Marcus based on its use of a tanker incompatible with the waste materials it agreed to transport.

On July 19, 2012, prior to discovery, Harold Marcus moved for summary judgment, arguing that plaintiffs' claims are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.  Defendant also moved in the alternative to dismiss Counts II and III as unripe for adjudication.

## II. ANALYSIS

*A.  Legal Framework*

The Carmack Amendment requires interstate motor carriers like Harold Marcus to provide a "receipt or bill of lading for property it receives for transportation."  49 U.S.C. § 14706(a)(1).[1]  The Amendment then imposes liability on such carriers "for the actual loss or injury to the property" detailed in the receipt caused by the carrier or other carriers in the

---

[1] A "bill of lading" is a "document acknowledging the receipt of goods by a carrier . . . and the contract for the transportation of those goods."  BLACK'S LAW DICTIONARY 176 (8th ed. 2004).

delivery chain.  *Id.*  Although the Amendment was originally adopted without discussion or debate, the Supreme Court concluded long ago that "it is evident that Congress intended to adopt a uniform rule and relieve [bills of lading] from the diverse regulation to which they had been theretofore subject."  *Adams Express Co.* v. *Croninger*, 226 U.S. 491, 506 (1913); *Hughes* v. *United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987) ("The purpose of this statute is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment.").

The Court has concluded that the Amendment has broad preemptive effect:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character.  It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract.  Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express*, 226 U.S. at 505-06; *Rini* v. *United Van Lines, Inc.*, 104 F.3d 502, 504 (1st Cir. 1997) ("The preemptive effect of the Carmack Amendment over state law governing damages for the loss or damage of goods has been reiterated by the Supreme Court in many cases and is well established.") (collecting cases).  The precise contours of preemption under the Carmack Amendment,

however, remain unclear. *Rini*, 104 F.3d at 504-05.

The Court has, at times, used exceptionally broad language to describe the Amendment's preemptive scope. *E.g.*, *New York, P. & N. R. Co.* v. *Peninsula Produce Exch. of Maryland*, 240 U.S. 34, 38 (1916) (Carmack Amendment "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination"); *Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U.S. 190, 196 (1916) ("[T]he words of the statute are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation."); *see also Smith* v. *United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("[T]he Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods."); *Am. Synthetic Rubber Corp.* v. *Louisville & N. R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970) (Carmack Amendendment effectively preempts any claim for "breach of contract of carriage").

However, some lower courts--including the First Circuit--have recognized that such broad language can be misleading, and that the Carmack Amendment's preemptive effect is limited to "state laws that impose liability on carriers based on the loss or damage of shipped goods." *Rini*, 104 F.3d at 506; *accord Gordon* v. *United Van Lines, Inc.*, 130 F.3d 282, 289 (7th

Cir. 1997) ("[N]ot every claim even remotely associated with the transfer of goods from one place to another is necessarily a claim for damages to the shippers' goods."). Accordingly, "liability arising from separate harms--apart from the loss or damage of goods--is not preempted." *Rini*, 104 F.3d at 506; *cf. Smith* v. *United Parcel Service*, 296 F.3d 1244 (11th Cir. 2002) (state law claims preempted by Carmack unless based on "conduct separate and distinct from the delivery, loss of, or damage to goods"); *Gordon*, 130 F.3d at 290 (state law claims preempted except as to "conduct that is sufficiently distinct from the contract of carriage that a separate and independent claim arises"); *N. Am. Van Lines, Inc.* v. *Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir. 1996) (relevant question for Carmack Amendment preemption is whether there is a "separate and independently actionable harm to the shipper as distinct from the loss of, or damage to, the goods").

In the final analysis, the Amendment's preemptive scope is substantial, and includes at its core "liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims." *Rini*, 104 F.3d at 506.

B. Breach of SERA (Count I)

Harold Marcus argues that Count I is preempted because Clean Harbors seeks damages for services "related to" the loss of its

shipment.  Defendant, however, has created this standard from whole cloth.  It bear reemphasizing the First Circuit in *Rini* described preemption of claims seeking to impose "liability *stemming from* damage or loss of goods."  104 F.3d at 506 (emphasis added).

Count I does not stem from the loss of goods, or even the parties' contract for transportation services.  Instead, liability here derives from the SERA, which is an independent agreement for cleanup services in the event of release of hazardous materials.  Harold Marcus might have made such an agreement for remediation services with any provider, and a state law breach of contract claim as to that agreement would not be preempted by the Carmack Amendment merely because the release of hazardous materials occurred in the course of Harold Marcus' activities as an interstate carrier.

That Harold Marcus contracted for such services with the shipper in this instance is immaterial.  Clean Harbors does not seek to recover for any breach of Harold Marcus' duties as common carrier.  Indeed, loss of the shipment is irrelevant beyond providing the factual background for this particular release of hazardous materials.  Liability for breach of contract here entails nothing more than the question of whether Clean Harbors provided services it agreed to provide in the SERA, and whether

Harold Marcus supplied the agreed-upon remuneration for those services.

This claim does not raise a concern about expanding the scope of carrier liability.  If Harold Marcus had incurred liability under state law for cleanup services provided by an entirely independent entity, it could have the same state law claim for contribution or indemnity against Clean Harbors (in its role as shipper) as it has under the current arrangement.  *E.g., Symington* v. *Great W. Trucking Co., Inc.*, 668 F. Supp. 1278 (S.D. Iowa 1987); *see also* Part II.C. *infra.*

The dispute about payment for contract cleanup services thus involves conduct and resulting harms "distinct from the contract of carriage." *Gordon*, 130 F.3d at 290.  Accordingly, I conclude that Clean Harbors' claim for breach of the SERA is not preempted by the Carmack Amendment.

*C.  Indemnity under WTA (Count II)*

A closer question is whether the Carmack Amendment preempts plaintiffs' claim for breach of the indemnity provisions of the WTA.  Harold Marcus argues that a contractual claim pursuant to the indemnity provision seeks to "enlarge the responsibility of the carrier for loss," and is therefore preempted. *Charleston & W.C. Ry. Co.* v. *Varnville Furniture Co.*, 237 U.S. 597, 603 (1915) (internal quotation omitted).  Harold Marcus' position is supported by the broad language in the cases regarding the

-8-

preemptive scope of the Carmack Amendment, *e.g.*, *Peninsula Produce*, 240 U.S. at 38, and the overarching purposes of the Carmack Amendment to provide uniform standards and relieve uncertainty for carriers regarding their liabilities for mishaps occurring in interstate carriage.  *Hughes.*, 829 F.2d at 1415.

Clean Harbors, however, argues it does not seek indemnity for the value of the product itself (presumably very little anyway, given that we are dealing with waste product), losses from inability to process the waste product or to satisfy another contract involving that waste product, or losses of any sort incurred as a result of the mere failure to move the waste product from point A to point B.  Rather, Clean Harbors seeks indemnity for losses it has and may continue to incur based on the harm its property caused to others.  Such injury, plaintiffs say, is separate from the loss or damage to the property itself.

The situation, however, is analogous to cases in which shippers and carriers seek indemnity or contribution from each other when one or both become subject to liability to third parties who have been harmed by improperly loaded cargo.  *See United States* v. *Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953) (allowing shipper to obtain indemnity from carrier who had knowledge of unsafe loading of cargo, which came loose in transit and killed passing driver); *Symington* v. *Great W. Trucking Co., Inc.*, 668 F. Supp. 1278 (S.D. Iowa 1987) (following leak of

hazardous material cargo due to improper loading, requiring shipper and carrier to split evenly payments under settlement reached by carrier with owner of land harmed by spill and company conducting cleanup operations).

A *carrier* who becomes liable to a third party under such circumstances can bring a state law contribution/indemnity claim against the shipper free from strictures of Carmack Amendment. *E.g.*, *S. Pac. Transp. Co.* v. *United States*, 456 F. Supp. 931, 945 (E.D. Cal. 1978). When a shipper seeks indemnity or contribution from the carrier for liabilities to third parties, however, it appears that the claim remains one under the Carmack Amendment.

In *United States* v. *Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953), both a shipper and carrier had been sued by the executrix of a driver killed by falling cargo, and both brought a third party complaint against the other for damage to property and for indemnity from liability to the decedent's estate. After concluding that the carrier was liable to the shipper for damage to property under the Carmack Amendment, the court went on to observe that its conclusion about recovery for property damage "has an important bearing upon the remaining question whether either of the parties, whose negligence contributed to the accident, is entitled to indemnity from the other." *Savage*, 209 F.2d at 446. The court found the carrier principally at fault because of the carrier's general "contractual duty to the shipper

to carry the goods safely" and more specific duties as to the loading of cargo under federal carrier regulations.  *Savage*, 209 F.2d at 447.[2]

Thus, a shipper's claim for contribution/indemnity from a carrier as to third-party liabilities, premised on the carrier's negligence during transportation, remains rooted in the carrier's "duty to exercise care in the storage and delivery of [a shipper's] goods, conduct clearly within the ambit of the Carmack Amendment."  *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 301-02 (D.R.I. 2007); *accord Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 866 (4th Cir. 1984) (applying federal law in shipper's claim for contribution against carrier, after shipper held liable to third party for harm caused by falling cargo); *Gen. Elec. Co. v. Moretz*, 270 F.2d 780, 787 (4th Cir. 1959) (Carmack Amendment implies into carriage contracts a provision for indemnity from liability for personal injury resulting from carrier's negligent transportation); *S. Pac. Transp. Co. v. United States*, 456 F. Supp. 931 (E.D. Cal. 1978) (drawing bright line between "carrier claims" brought under state

---

[2]The court in *Savage* went on to note that its conclusions were consistent with principles of contribution under the laws of Virginia--the state where the accident occurred.  *Savage*, 209 F.2d at 447.  I conclude, however, that *Savage* made its brief foray into state law only to ensure that its analysis of the shipper's indemnity claim under federal law was reconcilable with an analysis of the *carrier*'s indemnity claim under state law.

-11-

law, and "shipper claims" brought under the Carmack Amendment).[3]

So it is here. The loss of Clean Harbors' property in interstate transport resulted in at least environmental harms. Various public authorities have sought--and may continue to seek--compensation from Clean Harbors for those harms. The extent to which Harold Marcus may be liable for indemnification or contribution, however, stems from the loss of plaintiffs' property and depends upon its duties as a common carrier as embodied in the Carmack Amendment. Clean Harbors' only claim thus lies under the statute, and not under a state law breach of contract action for the indemnity provision included in the carriage contract. Count II is therefore preempted.

---

[3] I note that *Christie* v. *Ethyl Corp.*, 715 F.2d 203 (5th Cir. 1983), refused to require a carrier to indemnify a shipper for injuries sustained by a third party because the shipper had "no contractual indemnity rights based on any shipping documents or federal statutes or regulations." *Id.* at 205. This might be taken to imply that such a contractual indemnity provision, if it existed, would fall outside the scope of the Carmack Amendment. It appears, however, that the third-party injuries at issue in *Christie* were solely a result of negligence by the shipper--hence the shipper's attempt to rely on an implied contractual indemnity provision. *Christie* thus does little to call into doubt the thrust of the cases cited above--that a shipper's claim against a carrier for contribution or indemnity from third-party liabilities, premised on the carrier's negligence during transportation, falls within the purview of the Carmack Amendment. *Cf. also Georgia Kraft Co.* v. *Terminal Transp. Co.*, 343 F. Supp. 1240, 1245, 1247 (E.D. Tenn. 1972) (expressing similar skepticism about implied complete indemnity, but nonetheless indicating that shipper's claim governed by federal law).

*D.  Remaining Claims for Breach of WTA (Counts III & IV)*

For reasons similar to those discussed in the preceding section, Clean Harbors' remaining breach of contract claims are also preempted by the Carmack Amendment.  Any damages Clean Harbors can claim from Harold Marcus's alleged failure to procure the agreed-upon insurance coverage (Count III) relate only to lack of coverage for liability stemming from the loss of goods--namely, the third-party liabilities previously discussed.  And the claim that Harold Marcus breached the WTA by selecting a tanker incompatible with the waste materials it agreed to transport (Count IV) goes to the very core of its duties as carrier and again entails a claim for damages stemming from the loss of goods during interstate transportation.

### III. DISPOSITION

Despite having found Counts II through IV preempted by the Carmack Amendment, I am of the view that there remains some uncertainty as to the proper disposition of those counts.  The complication is whether the Carmack Amendment has "complete preemptive" force.

Complete preemption is an oftentimes convoluted and "misleadingly named doctrine that applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim."  *Hughes* v. *United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir. 2011).  In those instances, a pleaded state

law claim is treated as one arising under federal law. *Beneficial Nat. Bank* v. *Anderson*, 539 U.S. 1, 13 (2003). The complete preemption doctrine is typically invoked to establish federal jurisdiction and permit removal of such state-pleaded, federal-in-fact claims; but the doctrine has no such relevance here because Harold Marcus' removal of the case to this court was proper given the diversity of citizenship among the parties. 28 U.S.C. § 1332; 28 U.S.C. § 1441. Nevertheless, if Counts II through IV are not merely preempted but also completely preempted by the Carmack Amendment, there is some question whether they should simply be adjudicated as Carmack Amendment claims.

Central to the complete preemption analysis is whether Congress sought to establish uniform rules of liability and to provide exclusive remedies. *Beneficial Nat. Bank* v. *Anderson*, 539 U.S. 1, 9-10 (2003); *id.* at 9 n.5 ("the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive"). Because it is "well settled" that, in the interest of establishing uniform rules of carrier liability, "the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property," several courts have found the statute has complete preemptive force. *Hall* v. *N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007); *accord Hoskins* v. *Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003). I agree.

At this point, then, the case could simply proceed on the current complaint on the understanding that the state law claims in Counts II through IV in fact plead a claim under the Carmack Amendment.  *Cf. Hoskins*, 343 F.3d at 778-79 (proceeding to adjudication of merits after finding state law claims completely preempted by Carmack Amendment).  But I believe the better course is to dismiss Counts II through IV and allow Clean Harbors the opportunity to amend its complaint to plead a claim under the Carmack Amendment, if it so chooses.  If plaintiffs do so, additional motion practice is likely to follow, at which point I can properly adjudicate the Carmack Amendment claim.  *Cf. Hall*, 476 F.3d at 688-69 & n.9 (9th Cir. 2007) (dismissing completely preempted state law claims, but declining to rule on the merits of a Carmack Amendment claim because plaintiff declined to amend her complaint to add such a claim); *cf. also U.S. Aviation Underwriters, Inc.* v. *Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1339 n.17 (S.D. Ala. 2003).

I express no view on the merits of a Carmack Amendment claim here.  Indeed, plaintiffs may have refrained from filing a Carmack Amendment claim in the first instance due to any number of procedural obstacles.  *E.g.*, 49 U.S.C. § 14706(e) (describing notice periods required under bills of lading, and two-year limitation on actions from date of notice).[4]

---

[4] By contrast, procedural obstacles such as the $10,000 amount in controversy requirement for Carmack claims, 28 U.S.C. §

That said, I observe that Clean Harbors appears to have been proceeding under the assumption that a claim under the Carmack Amendment could not possibly provide remedies akin to those sought in its claims for breach of the WTA.  That assumption was immaterial for purposes of analyzing preemption, given that any contractual provision inconsistent with the mandate of the Carmack Amendment would be unenforceable anyway.  *Hughes Aircraft Co.* v. *N. Am. Van Lines*, 758 F. Supp. 555, 559 (N.D. Cal. 1990), *aff'd* 970 F.2d 609 (9th Cir. 1992) ("[A] contract clause purporting to expand the carrier's liability is unenforceable."); *cf. also REI Transp., Inc.* v. *C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008).  But plaintiffs' assumption appears to be in some measure erroneous.  The cases discussed-- particularly those in Part II.C *supra*--indicate that shippers have a means of obtaining contribution from carriers under federal law, consistent with the general availability of "reasonably foreseeable consequential damages" under the Carmack Amendment.  *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co.* v. *Yellow Freight Sys., Inc.*, 325 F.3d 924, 931 (7th Cir. 2003); *Nat'l Hispanic Circus, Inc.* v. *Rex Trucking, Inc.*, 414 F.3d 546, 549 (5th Cir. 2005) ("A carrier's liability under the Carmack Amendment includes all reasonably foreseeable damages

---

1337(a); 28 U.S.C. § 1445(b), likely pose little obstacle, given that Clean Harbors has put in issue the $100,000 it owes under settlement with the MDEQ.

resulting from the breach of its contract of carriage."). Again, however, without the benefit of briefing by the parties, I take no definitive position on such issues.

## IV. CONCLUSION

For the reasons set forth more fully above, defendant's motion for summary judgment is DENIED as to Count I, and GRANTED as to Counts II through IV. Plaintiffs are granted leave to amend their complaint on or before April 12, 2013, to add a claim for relief under the Carmack Amendment.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT